IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:08mj88 |
| | ) | |
| WEISS RASOOL, | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM AND POSITION WITH RESPECT TO SENTENCING FACTORS

COMES NOW the Defendant, Weiss Rasool, through counsel, and submits this sentencing memorandum to further assist this Court in determining a fair and just sentence in this matter. Officer Rasool submits that a sentence of no jail time is both sanctioned by the sentencing guidelines and also sufficient but not greater than necessary to achieve the statutory purposes of sentencing.

1. **BACKGROUND**

On January 31, 2008, Officer Rasool entered a plea of guilty to a single count criminal information charging him with Unauthorized Computer Access, in violation of 18 U.S.C. §§ 1030(a)(2)(B) and (c)(2)(A). He fully accepts responsibility for his actions and is prepared to serve the terms of any sentence imposed by this Court. Officer Rasool has cooperated with the probation department and provided the information needed to prepare a complete pre-sentence report. In addition, Mr. Rasool has been cooperating with law enforcement. He has undergone two debriefings at the United States Attorney's Office and remains readily available to assist FBI agents involved in this case.

## 2. CORRECTIONS AND OBJECTIONS TO PRESENTENCE REPORT

<u>Objection to ¶10</u>: Paragraph 10 of the presentence report appears to allege that Officer Wasool ran an unauthorized inquiry on a friend which yielded a terrorist alert and then called the Terrorist Screening Center to make inquires about the friend. This is not factually correct. At the time Officer Rasool ran this inquiry, he was on routine patrol and had gone to his mosque. He ran the tag during the course of his law enforcement duties. It was not an unauthorized run. When he received the alert, he followed the prescribed protocol and called the Screening Center to report the location of the individual. He did not make any inappropriate inquiries. He simply told them the individual's location and explained that he knew the person because they both regularly attended the mosque. Officer Rasool had no knowledge that this person was an "associate" of anyone under investigation by the federal authorities.

<u>Objection to ¶30</u>: Although it does not change his Sentencing Guidelines range, Officer Rasool objects to receiving a two point enhancement under U.S.S.G. § 3B1.3 for abusing a position of trust and/or using a special skill. Virtually all police officers in the United States have access to the National Crime Information Center (NCIC). Thus, the ability to access this database is not characterized by the professional or managerial discretion contemplated by §3B1.3. It is much more akin to the bank teller example in the commentary to §3B1.3 where it is explained that the enhancement would not apply because such clerical positions do not involve the level of trust and discretion contemplated by the section. Although Officer Rasool accessed the database beyond the scope of his authority, he did not breach any fiduciary duty or obtain

anything of financial value. He also did not improperly disclose to anyone that they had been listed on the Violent Gang Terrorist Organization File (VGTOF).[1]

### 3. POSITION OF THE DEFENDANT REGARDING SENTENCING

Officer Rasool concurs with the government that he should receive the low end of the guideline. However, he objects with a number of assertions contained in the government's sentencing memorandum. First, he denies that he ever intentionally jeopardized any FBI investigation. Second, he denies that his conduct put the lives of any law enforcement agents at undue risk. And third, Officer Rasool's unauthorized access did not corrupt the integrity of NCIC or VGTOF.

#### A. Officer Rasool did not intentionally jeopardize an FBI investigation.

Although he has no specific recollection of this incident, Officer Rasool concedes that, while employed as a Fairfax County police officer on June 10, 2005, he accessed the National Crime Information Center (NCIC) and checked three license plate numbers. Officer Rasool also concedes that he never filed a police report documenting this search or explaining that it was done after a member of his congregation (hereinafter "the target") approached him with concerns about the cars. Had Officer Rasool taken this simple administrative step, it is quite possible this case would not be before the Court today.

Officer Rasool further admits that he called the target and left the following message:

> "This is Weiss. You spoke to me after the Juma prayer today, I'm the police officer. Umm, as I told you, I can only tell you if it comes back to a person or not a person and all three vehicles did not come back to an individual person. So, I just wanted to give you that much. Uhh, okay. Hope things work out for you. Enshallah!"

---

[1] The mechanics of accessing the NCIC database do not require any type of special skill which would support an increase under the other factor set forth in U.S.S.G. §3B1.

Officer Rasool's message never mentioned anything about the terrorist watch list or an ongoing government investigation. The statements were in no way a "code" or warning to the target that he was being investigated. The message was a simple statement regarding whether or not the questioned vehicles were registered "to a person or not." The search itself was a normal response to a citizen inquiry that was not unusual or uncommon.

The government's contention that these actions jeopardized an FBI investigation is without merit. Six weeks after receiving Officer Rasool's message, the target was arrested without incident. He was subsequently convicted and deported. Before he ran the three tags, Officer Rasool had no meaningful relationship with this man. After leaving his voice message, Officer Rasool had no further contact with him. These facts clearly demonstrate that the FBI's investigation was utterly unimpeded by Officer Rasool's conduct.

### B. Mr. Rasool did not jeopardize the lives of any FBI agents.

Officer Rasool's actions never posed a threat to any agents in the field. Officer Rasool is a sergeant with the Fairfax County Police Department. He fully understands the value of undercover work as well as the dangers of disclosing an on-going surveillance. He would never intentionally place another law enforcement officer in undue danger. Officer Rasool did not learn that the target was under investigation until he was contacted by the FBI in 2007, long after the target's conviction. Thus, he could not have divulged the existence of an ongoing investigation or the identity of any surveillance officers prior to the target's arrest. Officer Rasool merely told the target that the questioned cars were "not registered to an individual" and that he could not investigate the matter further. He never gave any indication that the cars belonged to the FBI or that the target was under surveillance.

### C. Officer Rasool did not compromise the NCIC or VGTOF databases.

Lastly, Officer Rasool never compromised the integrity of NCIC or VGTOF. Although he ran himself and his family outside the scope of his authorized access, he never divulged the information he obtained in a way that would undermine the databases. He ran himself and his family out of fear that they might be improperly listed on VGTOF.[2] He did not act for financial gain. Most importantly, he never divulged to anyone that they were listed on VGTOF.

### 4. CONCLUSION

Officer Rasool's unauthorized access of NCIC was a victimless crime that did not undermine law enforcement efforts. The conviction itself will serve as a deterrent to other officers who might not otherwise appreciate the sensitivity of these databases. Any residual effects remaining from Officer Rasool's conduct are being addressed by his continued cooperation with the government.

Based on the foregoing and such additional reasons as may be raised in open court, Officer Rasool asks that the Court accept the requests of both parties and impose no jail sentence. Officer Rasool submits that the entry of the conviction and the imposition of a reasonable fine are sufficient sanctions in this case.

Respectfully submitted,

WEISS RASOOL
By Counsel

---

[2] According to the March 31, 2008 issue of Time Magazine (p. 21), a recent audit by the Department of Justice revealed that the Terrorist Screening Database currently contains over 900,000 people. The database ballooned in this manner because it was compiled using old or inaccurate information which the FBI has not cleared.

5

_____/s/_____
James W. Hundley, VSB # 30723
BRIGLIA & HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tyson's Corner, Virginia  22182
703-883-0880
703-883-0899 (Facsimile)
jhundley@briglia-hundley.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2008, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notice of said filing (NEF) to the following:

>Jeanine Linehan
>Assistant United States Attorney
>2100 Jamieson Avenue
>Alexandria, VA 22314
>703-299-3897
>
>*Counsel for the United States*

_____/s/_____
James W. Hundley, VSB # 30723
BRIGLIA & HUNDLEY, P.C.
1921 Gallows Road, Suite 750
Tysons Corner, Virginia 22182
703-883-0880
703-883-0899 (fax)
jhundley@briglia-hundley.com

6